IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,   )
                            )
        Plaintiff,          )
                            )
    v.                      )   No. 13 CR 821
                            )
RUBEN ORENDAIN-RENTERIA,    )
                            )
        Defendant.          )

MEMORANDUM OPINION AND ORDER

Defendant's motion to dismiss the indictment charging him with illegal reentry in violation of 8 U.S.C. § 1326(a) and 6 U.S.C. § 202(4) is DENIED for the reasons stated below.

I.

The following facts are undisputed unless noted otherwise. Defendant is a male of Mexican origin who became a lawful permanent resident of the United States on April 12, 1989. In September 1993, Defendant was convicted of several drug offenses in Arizona state court. *See State v. Orendain*, 932 P.2d 1325 (Ariz. 1997) (affirming convictions). Immigration authorities placed Defendant in removal proceedings in February 1999. Two months later, on April 5, 1999, an immigration judge terminated Defendant's status as a lawful permanent resident and ordered his

1

removal.  Defendant was deported to Mexico the following day.

After being deported in April 1999, Defendant surreptitiously reentered the United States on an unknown date and was indicted for illegal reentry on October 16, 2013.  *See* Dkt. No. 1.  Defendant's motion to dismiss challenges whether federal authorities initiated this prosecution within five years of discovering his illegal presence in the United States.

The government contends that Immigration and Customs Enforcement ("ICE") officers first discovered Defendant's unlawful presence in the United States in May 2012 when they encountered him at the Stateville Correctional Center in Crest Hill, Illinois, where he was serving a sentence for marijuana possession with intent to deliver.

In contrast, Defendant argues that the U.S. Immigration and Naturalization Service ("INS") discovered his illegal presence in the United States in September 1999, five months after he was deported.  Defendant's argument is based on a letter that the INS sent to the Chicago, Illinois mailing address listed on his November 1998 application for a replacement green card.  *See* Dkt. No. 15 at Ex. A.  The INS letter, which is dated September 20, 1999, states:

2

> A search of this Service's records indicates that your status has been removed and you have been deported to Mexico [on] 6 Apr 1999. You are not eligible for the issuance of an Alien Registration Card. Therefore your application must be denied as a matter of law.

*Id.* (internal citation and paragraph break omitted).

Although the INS letter was returned as undeliverable, Defendant contends that it reflects the agency's "subjective expectation" or "belief" that he had unlawfully reentered the United States and was living in Chicago, Illinois in September 1999. Dkt. No. 18 at 1; *see also id*. at 2 (advancing the somewhat different argument that the INS letter reflects actual "knowledge" of Defendant's unlawful presence and location such that the INS "knew exactly where to find him").

Setting aside his shifting arguments about what inference(s) I should draw from the INS letter, Defendant's basic contention is the five year statute of limitations governing illegal reentry prosecutions started running in September 1999, which would render the present indictment untimely.

## II.

"The crime of illegal reentry under 8 U.S.C. § 1326(a)(2) is committed when a previously deported, removed, or excluded alien 'enters, attempts to enter, or is at any

3

time *found in*, the United States' without the Attorney General's permission." *U.S. v. Are*, 498 F.3d 460, 461 (7th Cir. 2007) (emphasis added).

Defendant has been indicted for the "found in" version of illegal reentry. This is a continuing offense because "a deportee who has reentered surreptitiously prolongs his illegal presence in the United States each day he goes undetected." *Id.* at 466. "[T]he statute of limitations generally does not begin to run for continuing offenses until the illegal conduct is terminated." *Id.* at 462.

The Seventh Circuit has identified two possible events that render the charged offense "complete," thereby triggering the statute of limitations:

> Under *Are*, the limitations period in an illegal reentry case begins to run, at the earliest, when the immigration authorities actually discover the illegal alien's presence, identity and status. At the latest, it begins to run when the alien turns himself in or is arrested.

*U.S. v. Gordon*, 513 F.3d 659, 665 (7th Cir. 2008) (internal citations omitted); *abrogated on other grounds by U.S. v. Bartlett*, 567 F.3d 901 (7th Cir. 2009). Although the "earliest" and "latest" dates identified in *Gordon* could vary widely,[1] the Seventh Circuit has not "commit[ted]

---

[1] *See e.g. U.S. v. Franco*, No. 11 CR 30, 2011 WL 2746648, at *8 (N.D. Ill. July 13, 2011) (Dow, J.) (dismissing illegal reentry prosecution where, despite having actual notice of defendant's unlawful presence in the United States in

4

itself to a single operative date on which the statute of limitations clock [begins] to run." *Id*.

Defendant's motion to dismiss fails even when measured against the "earliest" possible date on which the statute of limitations could have been triggered--that is, when immigration authorities "actually discover[ed]" his "presence, identity and status." *Id.; see also Are*, 498 F.3d at 462 (rejecting argument that "constructive" knowledge of what immigration authorities could have discovered through a reasonably diligent investigation triggers statute of limitations).

No case supports Defendant's novel theory that the INS, by mailing an undeliverable letter to his last known address in the United States in September 1999, somehow discovered that he had illegally reentered the country after being deported in April 1999. There mere act of mailing an undeliverable letter to Defendant's last known address is a far cry from the actions that have been deemed sufficient to impute actual notice to immigration authorities that a deportee has illegally reentered the country. *See Franco*, 2011 WL 2746648, at *8 (imputing actual notice of defendant's illegal reentry into the United States based on

---

December 2003 while he was serving a state prison sentence, the government allowed him to be released and did not arrest him for illegal reentry until December 2010).

5

Immigration and Customs Enforcement worksheet listing his status has a previously removed alien and physical presence in a state correctional center).

Defendant's lesser contention that the INS letter reflects the agency's "subjective expectation" or "belief" that he was living in Chicago, Illinois in September 1999 falters on several grounds.  To begin, unconfirmed speculation about whether a deportee reentered the United States and, if so, where he is residing is not one of the two possible "operative dates" identified in *Are* and *Gordon* for triggering the statute of limitations.  Second, I am not persuaded that the INS letter reflects the agency's belief that Defendant was residing in Chicago, Illinois in September 1999.  The more plausible inference is that the INS sent the letter as a matter of course in response to Defendant's application for a replacement green card with no expectation about whether, how, or where it would reach him.

As a final matter, Defendant's attempt to impute actual knowledge to the INS based on an undeliverable letter is similar, although far weaker, than an argument that Seventh Circuit has already rejected.  In *Are*, the INS opened an investigation in October 1998 based on at least two pieces of information about a Nigerian national who had been deported two years earlier: (1) a confidential tip

6

received in September 1997 that the defendant was living with his wife in Chicago, Illinois and (2) his unsuccessful attempt to reenter the United States at JFK Airport in New York in May 1998. 498 F.3d at 462. The INS's file contained an "Investigation Preliminary Worksheet" listing the defendant's location as "CHI" and noted that his case was being "placed in progress." *Id*. at 463.

Although the INS had an open investigation and probable location for its suspect as early as October 1998, the Seventh Circuit noted in *Are* that "[i]mmigration authorities [first] learned of Are's presence in Chicago and ascertained his identity and status as a prior deportee sometime in late 2003 or 2004" when he was arrested and fingerprinted by Chicago police for an unrelated offense. *Id*. at 467. In comparison to the evidence that was insufficient to establish actual knowledge of Mr. Are's unlawful presence in the United States, Defendant's evidentiary basis for saying that the government knew where to find him in September 1999--an undeliverable letter sent to a Chicago, Illinois address--is far weaker.

It follows that the statute of limitations for the charged illegal reentry offense did not begin to run in September 1999 when the INS attempted to send Defendant a

letter informing him that his application for a replacement green card had been denied.

III.

Having rejected Defendant's only challenge to the timeliness of the indictment, his motion to dismiss is denied for the reasons stated above.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: March 4, 2014